UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

M.A.V.V.,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondents.

Case No. C26-2721-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Customs and Immigration Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action challenging his redetention as unconstitutional under the Due Process Clause of the Fifth Amendment to the United States Constitution. *See generally* Dkt. 1. Respondents filed a return, Dkt. 5, together with sworn declarations from Deportation Officer Kurtis Reed, Dkt. 6, and their counsel Katherine Collins, Dkt. 7, and exhibits from Petitioner's immigration file, *id.*

Having reviewed the parties' submissions and the governing law, and finding no reply by Petitioner necessary to resolve this action, the Court GRANTS the petition IN PART for the reasons set forth below.

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela. *See* Dkt. 1 at 2. On September 19, 2023, he entered the United States after receiving an appointment through the CBP One appointment system and was granted parole. *See id.* at 5. He was also issued a Notice to Appear ("NTA") indicating that he was scheduled for a Master Calendar Hearing in Seattle on December 28, 2026. *See id.* Petitioner asserts that he was not given any reporting requirements, Alternatives to Detention conditions, or non-standard address-update requirements. *See id.* Respondents state they do not have evidence relating to the terms of Petitioner's parole. *See* Dkt. 5 at 5.

On July 18, 2025, Petitioner filed an application for asylum. *See* Dkt. 6 at 2; Dkt. 1 at 5. He also applied for, and was granted, employment authorization. *See* Dkt. 1 at 5-6. He obtained employment as a barber. *See id.* at 6. From the date of his entry through his redetention, Petitioner avers that he resided at the address listed on his NTA continuously and never received instruction from ICE to check in or update his address. *See id.*

According to the Form I-213 that documented his arrest, ICE officers were conducting a targeted immigration enforcement operation on July 17, 2026. They sought to detain a Mexican citizen who drove a grey Volkswagen GTI and was unlawfully in the United States, subject to a final order of removal, and without pending or approved immigration applications. *See* Dkt. 7-2 at 3. Officers observed Petitioner, who they reported matched their target's description, sitting in the driver's seat of a grey Volkswagen GTI. *See id.* There is no indication in the record that the officers ran the license plates of Petitioner's car to verify whether it belonged to their target before approaching. *See id.*

ICE officers approached Petitioner while he was sitting in his vehicle and waiting to start work. *See* Dkt. 1 at 6-7. The officer's conduct when approaching Petitioner is contested, but not

material to the issues before the Court. *See id.* at 7; Dkt. 7-2 at 3. Ultimately, the officers broke Petitioner's car window, forcibly removed him from the vehicle, searched him, and reviewed his identification documents. *See* Dkt. 1 at 7; Dkt. 7-2 at 3-4. Review of those documents revealed to the officers that Petitioner is Venezuelan, not Mexican, and therefore not the operation's intended target. *See* Dkt. 7-2 at 4. Per the Form I-213, the officers then conducted a records check, which "indicated that . . . [Petitioner] had never checked in with ERO and had never advised the U.S. government of his changes of address, in violation of the conditions of his release." *Id.* Based on that information, the officers took Petitioner into immigration custody. *See id.* Respondents confirm that "available administrative records do not contain any documentation or record relating to any release order or specific conditions of Petitioner's release from custody[,]" indicating that any documents reviewed by officers before arresting Petitioner did not set out specific conditions of release. Dkt. 5 at 4 n.2.

Petitioner has remained detained at the NWIPC since his arrest on July 17, 2026. *See* Dkt. 7-2 at 5; Dkt. 5 at 4. When Petitioner filed this habeas action on July 31, 2026, Petitioner's partner was eight months pregnant. *See* Dkt. 1 at 7. He has no known criminal history. *See* Dkt. 7-2 at 4.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

///

## III. DISCUSSION

Respondents confirm that Petitioner was paroled into the United States upon his arrival pursuant to the Immigration and Nationality Act § 212(d)(5), codified at 8 U.S.C. § 1182(d)(5). *See* Dkt. 5 at 3; Dkt. 6 at 2. In their return, Respondents contend Petitioner is subject to 8 U.S.C. § 1225(b)(2)'s mandatory detention provision. They acknowledge that they are not in possession of any evidence regarding the terms of Petitioner's parole or any process accorded to him prior to his redetention and the purported revocation of his parole. *See* Dkt. 5 at 4-5. They do not address any of the *Mathews* factors briefed by Petitioner in support of his claim that he was redetained in violation of his Fifth Amendment right to due process. *See id.*; Dkt. 1 at 16-17; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### A. Due Process Claim

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases employing the *Mathews* factors in similar immigration contexts). Consistent with this authority, the Court agrees the *Mathews* test is applicable here and it will therefore address the three factors below.

First, courts in this district have consistently concluded that individuals such as Petitioner—who have been released on parole under 8 U.S.C. § 1182(d)(5) and have lived with relative freedom in the United States for several years—have a protected liberty interest in not being redetained. *See Dieng v. Hermosillo*, 2026 WL 411857, at *3-5 (W.D. Wash. Feb. 13, 2026); *Torres v. Hermosillo*, 2026 WL 145715, at * 3-5 (W.D. Wash. Jan. 20, 2026); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025). District courts in the Ninth Circuit have also recognized that a "petitioner's liberty interest [does] not expire along with his parole." *Quiroga-Chaparro v. Warden of the Golden State Annex. Det. Facility*, 2025 WL 3771473, at *5 (E.D. Cal. Dec. 31, 2025); *see also G. G. v. Kaiser*, 2025 WL 3254999, at *6 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara*, 800 F. Supp. 3d at 1136-37. The record shows Petitioner had been released on parole and living in the United States for several years prior to his arrest and redetention. During that time, he established community roots by residing at a single residence and obtaining employment. He also filed an application for asylum, obtained work authorization, and started a family with his partner. This factor weighs in favor of Petitioner.

As for the second *Mathews* factor, multiple factual errors, memorialized in the Form I-213, were apparently made by the officers who arrested Petitioner. *See* Dkt. 5 at 3-4 n.2. The

officers were searching for a Mexican national who was subject to a final order of removal with no pending or approved immigration applications. *See* Dkt. 7-2 at 3. They approached Petitioner because he drove the same model and color car as their intended target and allegedly matched the target's description. *See id.* After breaking the vehicle's window and removing Petitioner from the vehicle, the officers obtained and reviewed identity documents in Petitioner's wallet which indicated he was Venezuelan, not Mexican. *See id.* at 4. Officers reviewed records, pulled during the encounter, that indicated Petitioner had never checked in with ICE or advised ICE of a change in address, and they determined that Petitioner had therefore violated his conditions of release. *See id.* In fact, Respondents concede that they have no evidence of specific conditions imposed on Petitioner's release, which compels a conclusion that the arresting officers did not review any specific conditions of Petitioner's release before arresting him on grounds that he had violated them. Further, Petitioner asserts that he has only ever resided at the Tacoma address listed on his NTA. *See* Dkt. 1 at 6; Dkt. 7-1 at 2 (NTA). Because he has never changed his address, Petitioner never had an updated address to provide to ICE. Petitioner also asserts that he was never directed by ICE to check in and that no specific conditions were imposed on his release, which Respondents do not dispute. *See* Dkt. 1 at 6. Petitioner could not have violated conditions that were never imposed. The complete lack of procedures used here, following officers' misidentification of Petitioner for their apparent intended target, heightened the risk that Petitioner would be erroneously deprived of his liberty. Procedural safeguards would likely have afforded opportunity for Petitioner to correct the officers' blatant factual errors that triggered his redetention. The second *Mathews* factor favors Petitioner.

Finally, the Government asserts no interest in redetaining Petitioner, and the Form I-213 indicates Petitioner was not the target of the arresting officers' investigation and enforcement operation. Instead, Petitioner was present in the United States on apparently unconditional parole that the Government does not claim had expired or was violated by Petitioner. The third factor weighs in Petitioner's favor.

In sum, all three *Mathews* factors weigh decisively in Petitioner's favor. Given the liberty interest at stake, the high risk of erroneous deprivation, and the absence of any asserted governmental interests, providing no pre-deprivation process was constitutionally deficient. Habeas relief is therefore warranted. Consistent with cases in this district, the Court ORDERS that Petitioner be RELEASED from custody. *See Kumar v. Noem*, C26-0294-SKV, 2026 WL 668335, at *5 (W.D. Wash. Mar. 10, 2026); *Nava v. Mullin*, C26-02324-TLF, 2026 WL 2294576, at *6 (W.D. Wash. Aug. 10, 2026).

B. <u>Injunctive and Other Relief Requests</u>

Petitioner also seeks an injunction barring his redetention without due process. *See* Dkt. 1 at 18. "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief[ by demonstrating] . . . (1) that [he or she] . . . has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiff asserts that his redetention despite his strict compliance with any applicable parole requirements points to a significant risk that he would be redetained unlawfully again if released on the same conditions. *See* Dkt. 1 at 17. He also argues that the balance of hardships

and public interest weigh in his favor, as the requested injunction would simply require that Respondents comply with the Constitution if they seek to redetain him. *See id.*

Petitioner was approached by immigration agents merely because of his alleged resemblance to their actual target while occupying a vehicle of the same make and color of the target. There is no indication in the record that officers took basic measures, like cross-referencing the license plate of Petitioner's car with that of their intended target, to determine whether the vehicle belonged to their target before approaching Petitioner, smashing the vehicle's window, and forcibly removing him. Upon discovering Petitioner was Venezuelan, and not their intended Mexican target, officers nonetheless proceeded to detain him based only on records pulled while in the field. The officers appear to have drawn a legal conclusion from their review of those records, which turned out to be factually baseless. As a result, Petitioner has been detained for over a month and unable to be with his partner who, at the time he filed for habeas relief, was eight months pregnant. It is not clear from the record whether Petitioner has, in the course of his detention, missed the birth of his child. He has missed the opportunity to provide support to his pregnant partner. The baseless and unlawful deprivation of liberty Petitioner has suffered is undoubtedly an irreparable injury not compensable with money damages. Neither Respondents, nor the public interest, would suffer hardship or be disserved by a bar on subsequent unlawful redetention of a community member. On these facts, which indicate an egregious level of carelessness by arresting officers that led to an unlawful redetention and irreparable harm to Petitioner, the Court finds injunctive relief warranted.

Respondents are hereby ENJOINED from redetaining Petitioner without prior notice and a hearing that satisfies the Due Process Clause of the Fifth Amendment.[1]

Finally, Petitioner seeks an order directing Respondents to return his personal effects and identification documents. *See id.* at 19. He does not brief that request or cite grounds to believe Respondents will withhold his belongings and documents. Accordingly, this request is DENIED without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the petition, Dkt. 1, and ORDERS that Petitioner be released from immigration detention **within eight (8) hours of this Order in view of the recent or now imminent birth of his child**. Respondents shall file a certification within twenty-four (24) hours that Petitioner has been released. Respondents are ENJOINED from redetaining Petitioner without prior notice and a hearing that satisfies the Due Process Clause of the Fifth Amendment. Petitioner's request for an order compelling return of his personal effects and identification is DENIED without prejudice as unbriefed.

Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 19th day of August, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

[1] Petitioner does not support his request that the Government be required to demonstrate flight risk or danger to the community by a clear and convincing evidence standard at that hearing. *See* Dkt. 1 at 19. He does not provide legal argument in support of what standard should apply, and the Court declines to address that unbriefed component of his request for relief.